UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JO ELLYN SCHIPPER,

                Plaintiff,      Civil Action No. 19-12163
                                          Honorable Linda V. Parker
v.                                         Magistrate Judge David R. Grand

COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.
_____/

## REPORT AND RECOMMENDATION
## ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [16, 18]

Plaintiff Jo Ellyn Schipper ("Schipper") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions (Docs. #16, #18), which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

**I.    RECOMMENDATION**

For the reasons set forth below, the Court finds that the Administrative Law Judge's ("ALJ") conclusion that Schipper is not disabled under the Act is not supported by substantial evidence. Accordingly, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment **(Doc. #18)** be **DENIED**, Schipper's Motion for Summary Judgment **(Doc. #16)** be **GRANTED IN PART** to the extent it seeks remand and **DENIED**

**IN PART** to the extent it seeks an award of benefits, and that, pursuant to sentence four of 42 U.S.C. § 405(g), this case be **REMANDED** for further proceedings consistent with this Report and Recommendation.

## II. REPORT

### A. Background

Schipper was 38 years old at the time of her alleged onset date of March 1, 2008, and at 5'10" tall weighed approximately 300 pounds during the relevant time period. (Tr. 262, 266). She completed high school and subsequently earned an associate degree in nursing. (Tr. 58, 267). Previously, she worked as a mortgage loan processor and as a nurse tech, but she stopped working in March of 2008 after suffering two separate injuries at work. (Tr. 58-59, 266-67, 276, 756, 849). She now alleges disability primarily as a result of chronic back and neck pain, knee and shoulder pain, diabetes, headaches, obesity, and anxiety. (Tr. 54, 62-63, 69, 266).

After Schipper's applications for DIB and SSI were denied at the initial level on October 14, 2016 (Tr. 114-18, 122-26), she timely requested an administrative hearing, which was held on June 6, 2018, before ALJ Virginia Herring (Tr. 50-85). Schipper, who was represented by attorney John Schipper, testified at the hearing, as did vocational expert ("VE") Pauline McEachin. (*Id.*). On September 9, 2018, the ALJ issued a written decision finding that Schipper is not disabled under the Act. (Tr. 14-27). On May 28, 2019, the Appeals Council denied review. (Tr. 4-9). Schipper timely filed for judicial review of the final decision on July 24, 2019. (Doc. #1).

The Court has thoroughly reviewed the transcript in this matter, including

Schipper's medical record, function and disability reports, and testimony as to her conditions and resulting limitations. Instead of summarizing that information here, the Court will make references and provide citations to the transcript as necessary in its discussion of the parties' arguments.

### B.     The ALJ's Application of the Disability Framework Analysis

Under the Act, DIB and SSI are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, No. 11-10593, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. § 404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following this five-step sequential analysis, the ALJ found that Schipper is not disabled under the Act. At Step One, the ALJ found that Schipper has not engaged in substantial gainful activity since March 1, 2008 (the alleged onset date). (Tr. 16). At Step Two, the ALJ found that she has the severe impairments of right knee arthritis with complex medial meniscal tear; right shoulder adhesive capsulitis, arthritis, and lipoma; right shoulder status-post subacromial decompression surgery with manipulation and debridement; left shoulder labral tear; and adjustment disorder with anxiety and depression. (*Id.*). At Step Three, the ALJ found that Schipper's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment. (Tr. 18).

The ALJ then assessed Schipper's residual functional capacity ("RFC"), concluding that she is capable of performing light work, with the following additional limitations: can only occasionally push and pull; can sit for 6 hours in an 8-hour workday, but is able to stand or walk for only 4 hours; can occasionally climb stairs or ramps, balance, and stoop,

but can never climb ladders, ropes, or scaffolds or kneel, crouch, or crawl; no overhead reaching or reaching behind, bilaterally; can frequently handle and finger; must avoid dangerous machinery and unprotected heights; and is limited to simple and routine tasks. (Tr. 20).

At Step Four, the ALJ found that Schipper is unable to perform her past relevant work. (Tr. 25). At Step Five, the ALJ determined, based in part on testimony provided by the VE in response to hypothetical questions, that Schipper is capable of performing the jobs of general office clerk (250,000 jobs nationally), information clerk (180,000 jobs), and inspector (108,000 jobs). (Tr. 26). As a result, the ALJ concluded that Schipper is not disabled under the Act. (*Id.*).

### C. Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions

of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *See Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted).

**D.    Analysis**

In her motion for summary judgment, Schipper argues that the ALJ erred in formulating her RFC without the benefit of any medical opinion and, as a result, that the RFC finding is not supported by substantial evidence.[1] (Doc. #16 at 15-21). For the reasons set forth below, the Court agrees and finds that remand is required.

---

[1] Schipper also argues that the RFC finding is "internally inconsistent" in that the ALJ found her capable of performing light work – which involves lifting and carrying 10 pounds frequently –

6

### 1. *The Relevant Medical Evidence*[2]

After Schipper injured her right knee while lifting a patient at work, she underwent surgery to repair a torn meniscus in July 2007. (Tr. 756-57). She returned to her job as a nurse tech but apparently injured her right shoulder at work the following year. (Tr. 849). A May 2008 MRI showed abnormal signal changes in the rotator cuff without a complete tear and some fluid in the subacromial subdeltoid bursa region. (Tr. 815). In June 2008, Schipper had a cervical spine MRI, which showed posterior disc protrusion at C6-C7 without central canal stenosis. (Tr. 809). In September 2009, Schipper underwent a right shoulder arthroscopy with debridement and subacromial decompression due to adhesive capsulitis, impingement syndrome, and bicipital tendinitis. (Tr. 848-50).

There is a gap in the medical evidence following Schipper's right shoulder surgery and subsequent rehabilitation. On May 30, 2012, Schipper presented to Michael Kapsokavathis, D.O. at Michigan Orthopedic & Spinal Surgery with complaints of low back pain, with numbness, tingling, and weakness in the right leg. (Tr. 345-46). Dr. Kapsokavathis reviewed the results of a lumbar spine MRI and noted that it showed degenerative disc disease with bilateral paracentral/foraminal bulges at the L4-5 level that were touching the nerve roots. (Tr. 348). Schipper received an epidural steroid injection, was prescribed Naproxen for pain, and was referred to physical therapy. (*Id.*).

---

despite also finding that she can stand or walk for only four hours per day. (Doc. #16 at 21-23). Because the Court is recommending remand on other grounds, it need not address the merits of this argument.

[2] Because Schipper's motion focuses on the ALJ's evaluation of her *physical* RFC, the Court will focus its discussion on medical evidence pertaining to her physical impairments.

In December 2013, Schipper presented to Thomas Nabity, M.D. at Michigan Neurology Associates ("MNA") with complaints of continued low back pain. (Tr. 662). She reported getting almost a year of pain relief from her prior injection, and another one was administered; she was also prescribed Percocet for pain. (Tr. 662-64). Schipper returned to MNA in January 2014, complaining of a headache radiating into her neck following the injection. (Tr. 665). An MRI of the cervical spine was performed on January 24, 2014, which showed C3-C4 disc spurring, which abutted the spinal cord; C6-C7 disc protrusion with mild mass effect on the spinal cord; and C7-T1 central disc protrusion without stenosis. (Tr. 668). Schipper followed up at MNA in February 2014 and agreed to a course of cervical injections and physical therapy.[3] (Tr. 669). Schipper saw Dr. Nabity again on February 25, 2014, after slipping on ice. (Tr. 671). She reported extreme pain in the left buttock and leg; x-rays revealed lumbar degenerative disc disease and radiculopathy; and Percocet was continued. (Tr. 633, 673).

On January 26, 2015, Schipper presented to Kenneth Scott, D.O. with complaints of left shoulder pain with upper arm paresthesia and pain radiating from her arm to her hand. (Tr. 674). An MRI showed a posterior labral degenerative tear with paralabral cyst, and she was diagnosed with thoracic outlet syndrome. (Tr. 677).

On August 22, 2016, Schipper returned to Dr. Scott's office with right knee pain

---

[3] In September 2014, Dr. Kapsokavathis reviewed the results of this MRI and voiced support for Schipper's choice to pursue conservative treatment "for the time being." (Tr. 45). He indicated that, in light of Schipper's MRI findings, the common recommendation would be for decompression and fusion surgery, but because she was not myelopathic on exam, he was comfortable trying a course of physical therapy first. (*Id.*).

8

after falling four months earlier. (Tr. 679). She had pain, instability, and difficulty moving into a squatting position. (*Id.*). X-rays showed no significant evidence of narrowing in the medial or lateral compartments of the right knee; she was given an injection for pain, Percocet was continued, and she was referred to physical therapy. (Tr. 680).

On June 1, 2017, Schipper followed up with Dr. Scott for right shoulder pain, indicating that she had done well after a prior injection (in November 2016) but that her pain had returned. (Tr. 690). On examination, she had full strength and her sensation was intact, but she had tenderness to palpation of the right AC joint. (Tr. 693-94). She was diagnosed with adhesive capsulitis, another injection was administered, she was prescribed Mobic for pain, and she was again referred to physical therapy. (Tr. 694).

Schipper returned to see Dr. Scott on July 13, 2017, reporting that she had not started physical therapy and was continuing to experience pain and difficulty with daily activities, such as getting dressed. (Tr. 697). She was again diagnosed with adhesive capsulitis, Dilaudid was prescribed for pain, and she was advised to start physical therapy. (Tr. 701). At the same visit, Schipper also complained to Dr. Scott of ongoing right knee pain, reporting that her knee was "giving out." (Tr. 702). On examination, she had mild knee effusion, reduced range of motion, and a positive McMurray sign. (Tr. 705). An outside MRI was reviewed, which showed a complex posterior horn tear of the medial meniscus, and Dr. Scott noted that surgery would be considered if she continued to have mechanical symptoms. (Tr. 706).

Schipper returned to Dr. Scott for her knee and shoulder pain on August 24, 2017. (Tr. 708). She reported that her knee pain could reach 10/10 even with pain medication,

her gait was antalgic, and she received another injection. (Tr. 708, 713). Dr. Scott noted that arthroscopy would be considered if the injection and physical therapy did not significantly improve her pain and function by the next appointment. (Tr. 713). As for her shoulder, imaging showed moderate arthrosis of the glenohumeral joint with a large osteophyte of the humeral head. (Tr. 718). Dr. Scott noted that arthroscopic surgery was not an option due to her "significant glenohumeral arthritis," but that arthroplasty could be considered in the future. (Tr. 719). At a follow-up visit to Dr. Scott in October 2017, Schipper again complained of knee and shoulder pain. (Tr. 721, 727). She noted that although the injections had helped with her knee pain, she had to discontinue them because she was diabetic, and they had caused her blood sugar to spike, resulting in a hospitalization. (Tr. 727).

On January 4, 2018, Schipper returned to Dr. Scott to discuss surgical options for her knee pain. (Tr. 732). Imaging was performed, which showed medial compartment narrowing in both knees without bone-on-bone narrowing, and Dilaudid was continued. (Tr. 736, 737). Dr. Scott indicated that Schipper would eventually require knee arthroplasty, but "at her young age and with her other comorbidities [he] would like to wait." (Tr. 737). With respect to her shoulder, Schipper reported that physical therapy helped "moderately" with her pain and range of motion, but surgical options for this condition were also discussed. (*Id.*). Dr. Scott noted that Schipper would benefit from a humeral head resurfacing due to her arthritis in the glenoid, but she was not a candidate for that procedure at the time due to her uncontrolled diabetes. (Tr. 742).

On March 16, 2018, Dr. Scott completed a medical source statement, indicating that Schipper had diagnoses of right knee arthritis, complex medial meniscus tear, right shoulder adhesive capsulitis, arthritis, lipoma, and left shoulder labral tear. (Tr. 926). Symptoms included pain and instability in the right knee and pain and loss of motion in the right shoulder. (*Id.*). In the portion of the form requesting information about Schipper's work-related limitations, Dr. Scott wrote "refer to functional capacity evaluation for answers." (Tr. 930). However, the record contains no such evaluation.

### 2. *The ALJ's RFC Analysis*

As set forth above, the ALJ determined that Schipper has the RFC to perform light work, with certain specific, additional limitations: can only occasionally push and pull; can sit for 6 hours in an 8-hour workday, but is able to stand or walk for only 4 hours; can occasionally climb stairs or ramps, balance, and stoop, but can never climb ladders, ropes, or scaffolds or kneel, crouch, or crawl; no overhead reaching or reaching behind, bilaterally; can frequently handle and finger; must avoid dangerous machinery and unprotected heights; and is limited to simple and routine tasks. (Tr. 20).

In formulating Schipper's RFC, the ALJ considered Dr. Scott's March 2018 "statements concerning [Schipper's] impairments and associated symptoms," but in terms of affording weight to the medical opinion, concluded that "there is no functional analysis given and thus, no weight has been assigned." (Tr. 24). Schipper does not argue that the ALJ erred in giving no weight to Dr. Scott's opinion; indeed, she acknowledges that Dr. Scott "failed to complete the 'RFC' portion of the form he provided[.]" (Doc. #16 at 15, n. 2). Schipper argues, however, that because the record in this case contains no RFC

11

assessment from a medical source, "the ALJ's determination that [she] was capable of performing a limited range of light work was based solely on the ALJ's own interpretation of the raw medical data." (*Id.* at 15). While any suggestion that an ALJ may not determine an RFC without tying each restriction to a specific medical opinion lacks merit,[4] for the reasons set forth below, the Court agrees that the ALJ's RFC finding in this case is not supported by substantial evidence.

A claimant's RFC is the most that he or she can do despite his or her impairments. *See* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In other words, the RFC describes "the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from – though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002). An ALJ is responsible for determining a claimant's RFC after reviewing all of the relevant evidence of record. *See Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 727-28 (6th Cir. 2013).

But, "while an ALJ is free to resolve issues of credibility as to lay testimony, or to choose between properly submitted medical opinions, the ALJ cannot substitute his or her own lay medical opinion for that of a treating or examining doctor." *Smiley v. Comm'r of Soc. Sec.*, 940 F. Supp. 2d 592, 600 (S.D. Ohio 2013) (internal quotation marks and

---

[4] Schipper recognizes as much, noting that "the final RFC assessment is the sole responsibility of the ALJ." (Doc. #16 at 15). *See also Tucker v. Comm'r of Soc. Sec.*, 775 F. App'x 220, 226 (6th Cir. 2019) ("No bright-line rule exists in our circuit directing that medical opinions must be the building blocks of the residual functional capacity finding …."); *Mokbel-Aljahmi v. Comm'r of Soc. Sec.*, 732 F. App'x 395, 401 (6th Cir. 2018) ("We have previously rejected the argument that a residual functional capacity determination cannot be supported by substantial evidence unless a physician offers an opinion consistent with that of the ALJ.").

12

brackets omitted). "The underlying reason for this rule is that ALJs are lay persons, not experts capable of meaningfully sifting through the shapeless mass of medical data." *Charbonneau v. Comm'r of Soc. Sec.*, No. 18-10112, 2019 WL 960192, at *16 (E.D. Mich. Jan. 11, 2019). Thus, while there is no bright line rule in this district that ALJs must employ supporting medical opinions when constructing the RFC, *see supra* at 12, n. 4, the RFC finding must be "'supported by substantial evidence and not merely the ALJ's own medical interpretation of the record.'" *Id.* (quoting *Gross v. Comm'r of Soc. Sec.*, 247 F. Supp. 3d 824, 829 (E.D. Mich. 2017)). "Under this approach, the court must also examine whether the medical evidence of impairment was simple enough that the ALJ could come to a 'commonsense judgment' about the RFC." *Id.* (quoting *Gross*, 247 F. Supp. 3d at 830). And, the ALJ's written decision must make sufficiently clear how she translated the record evidence into the ultimate RFC. *See Gross*, 247 F. Supp. 3d at 829.

Thus, the principal question here, where there is *no* medical opinion underpinning the ALJ's RFC assessment, is whether the ALJ had some basis – beyond her own interpretation of the raw medical data – for reaching her ultimate RFC determination. *See McCaig v. Comm'r of Soc. Sec.*, No. 16-11419, 2017 WL 4211047, at *8 (E.D. Mich. Sept. 21, 2017) (finding that "a record without any opinion evidence at all forces the ALJ into the untenable position of playing doctor[,]" whereas a record that contains some medical opinion – even if not adopted – provides "some medical opinion evidence from which the ALJ may extrapolate to form her own RFC without interpreting raw medical data"). "[I]n order to make a decision on this issue, this Court may not uphold an ALJ's decision, even if there is enough evidence in the record to support it, if the decision fails to provide an

adequate and logical bridge between the evidence and the result." *Gross*, 247 F. Supp. 3d at 829 (internal quotations omitted).

Here, Schipper testified to several limitations that are inconsistent with the ALJ's RFC finding, including being unable to lift more than a half-gallon of milk; being unable to stand for more than 10 minutes at a time; tingling and numbness in her hands, which causes her to drop things; and problems with reaching forward for more than 15 minutes. (Tr. 64, 71-72, 75). The ALJ discounted this testimony, finding instead that Schipper has the RFC to lift up to 20 pounds, stand or walk for 4 hours in a work day, frequently handle and finger, and reach forward in an unlimited fashion. (Tr. 20). Here, as in *McCaig*, the ALJ's discussion of the medical evidence was not inadequate; indeed, her decision contains a relatively detailed summary of the objective medical evidence and Schipper's course of treatment. (Tr. 21-24). But, there is no discussion in the decision as to *how* the ALJ reached each of her conclusions as to Schipper's functional limitations, or what portions of the record suggest that these limitations – and not others – are warranted. Instead, the ALJ simply states, "[t]he limitations in the residual functional capacity determination adequately consider [Schipper's] severe bilateral shoulder and right knee impairments, as well as the non-severe conditions as warranted." (Tr. 23). This is problematic because, in light of the medical evidence in this case, and in the absence of a functional capacity medical opinion, there is no way for the Court to confirm the ALJ's assertion.[5] *See*

---

[5] The Commissioner attempts to bolster the ALJ's RFC finding by pointing to evidence in the record – such as physical examination findings and daily activities – that are inconsistent with Schipper's allegations that she experiences numbness and tingling in her hands and has difficulty lifting, standing, and reaching forward. (Doc. #18 at 10-14). But, where the vast majority of the

14

*McCaig*, 2017 WL 4211047, at *9 (remand warranted where the ALJ did "a thorough job of recounting much of the medical evidence accumulated over the course of [her] treatment, [but] in several instances, it is unclear how [the] RFC conclusions correlate to the medical findings").

This is not a case where the medical evidence shows relatively little impairment such that the ALJ could make a "commonsense judgment" about Schipper's functional capacity. *Charbonneau*, 2019 WL 960192, at *16; *see also, Gross*, 247 F. Supp. 3d at 828 (an ALJ "must generally obtain a medical expert opinion when formulating the RFC unless the medical evidence shows relatively little physical impairment such that the ALJ can permissibly render a commonsense judgment about functional capacity") (internal quotations and citations omitted). The record contains two cervical spine MRIs, including one from 2014 that showed C3-C4 disc spurring, which abutted the spinal cord; C6-C7 disc protrusion with mild mass effect on the spinal cord; and C7-T1 central disc protrusion without stenosis. (Tr. 668). These findings were apparently severe enough that decompression and fusion surgery would commonly be recommended. (Tr. 45). The record also contains x-rays and MRIs of Schipper's right knee from 2017 and 2018, which showed a complex posterior horn tear of the medial meniscus (Tr. 706) and medial compartment narrowing (Tr. 736) – conditions which would require knee replacement surgery once her diabetes was under better control (Tr. 737). And, the record contains x-

---

examination findings cited to by the Commissioner were not discussed by the ALJ, "the Commissioner's reliance on these records is a post-hoc rationalization of the ALJ's decision, which certainly cannot be sufficient to support its argument." *Eberhardt v. Comm'r of Soc. Sec.*, No. 15-13811, 2017 WL 971705, at *10, n. 2 (E.D. Mich. Feb. 16, 2017).

rays and MRIs of both of Schipper's shoulders, showing a posterior labral degenerative tear with paralabral cyst on the left (Tr. 677) and moderate arthrosis of the glenohumeral joint with a large osteophyte from the humeral head and some calcification of the rotator cuff on the right (Tr. 718), the latter of which would require shoulder replacement surgery once Schipper's diabetes was under control (Tr. 719).

Taken as a whole, then, it simply cannot be said that the evidence pertaining to Schipper's physical impairments was so simple that the ALJ could render a commonsense judgment about easily understood medical findings as they relate to her functional capabilities. Rather, this is a case where the record contains no medical opinion regarding Schipper's specific functional limitations, and the ALJ took it upon herself to translate raw medical data into such limitations, rather than entrusting that responsibility to a medical professional. This is impermissible given the objective medical evidence in this case, and remand is required. *See Keener v. Comm'r of Soc. Sec.*, No. 18-CV-00913-MJR, 2020 WL 755377, at *6 (W.D.N.Y. Feb. 7, 2020) (an ALJ is permitted to make a commonsense judgment as to a claimant's functional capacity only when there are "minor physical impairments, or when the record is clear and there is a useful assessment of [the] plaintiff's limitations"); *VanWormer v. Comm'r of Soc. Sec.*, No. 16-12978, 2017 WL 4230654, at *3 (E.D. Mich. Sept. 25, 2017) (remand required where the ALJ "improperly made a finding as to Plaintiff's functional capacity based on an independent review of Plaintiff's raw medical data without an opinion from a treating or examining source, which is inconsistent with the practice of this Circuit").

### III. CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment **(Doc. #18)** be **DENIED**, Schipper's Motion for Summary Judgment **(Doc. #16)** be **GRANTED IN PART** to the extent it seeks remand and **DENIED IN PART** to the extent it seeks an award of benefits, and that, pursuant to sentence four of 42 U.S.C. § 405(g), this case be **REMANDED** for further proceedings consistent with this Report and Recommendation.

Dated: April 7, 2020       s/David R. Grand
Ann Arbor, Michigan      DAVID R. GRAND
     United States Magistrate Judge

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation, any party may serve and file specific written objections to the proposed findings and recommendations set forth above. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. L.R. 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also*

*Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. L.R. 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on April 7, 2020.

s/Eddrey O. Butts  
EDDREY O. BUTTS  
Case Manager
